# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class ANTHONY M. STANCZYK**
**United States Army, Appellant**

ARMY 20110438

Headquarters, United States Army Maneuver Support Center of Excellence,
Charles D. Hayes, Military Judge
Colonel James R. Agar, Staff Judge Advocate

For Appellant: Frank J. Spinner, Esquire (argued); Captain James P. Curtin, JA; Frank J. Spinner (on brief); Captain Robert N. Michaels, JA; Frank J. Spinner, Esquire (on reply brief).

For Appellee: Captain Timothy C. Erickson, JA (argued); Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Elisabeth A. Claus, JA; Captain T. Campbell Warner, JA (on brief).

10 January 2014

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

Senior Judge COOK:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of violating a lawful general regulation, one specification of rape, one specification of forcible sodomy, and two specifications of assault consummated by battery[1] in violation of Articles 92, 120, 125, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 920, 925 and 928

---

[1] Appellant was initially charged with a specification of aggravated assault by means or force likely to cause death or grievous bodily harm. The military judge found appellant not guilty of aggravated assault, but guilty of the lesser included offense of an assault consummated by battery.

(2006 & Supp. III 2010) [hereinafter UCMJ].[2]  The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for thirty-six months, and reduction to the grade of E-1.  The convening authority deferred automatic forfeitures and reduction in rank for a period of six months and awarded appellant 161 days of confinement credit.

The case is now before this court for review under Article 66, UCMJ. Appellant raises three assignments of error to this court.  One assignment of error warrants discussion but no relief.[3]

## BACKGROUND

On the evening of 13 December 2010, appellant's wife, CS, called the Fort Leonard Wood, Missouri, police and reported that appellant had just committed various acts of physical and sexual abuse against her at their on-post home.  When law enforcement arrived, appellant was taken into custody and subsequently interviewed by CID agents.  CS was transported to a hospital for a sexual assault examination.  The examination revealed bruises and contusions on CS's face and arms, swelling and redness of her vagina consistent with forceful penetration, and redness in the area of her anus potentially caused by force.

After charges were preferred against him based upon the above events, appellant's mother contacted appellant's former wife, AP, in the hopes of securing her cooperation in his defense by establishing that appellant was a gentle individual and had not been an abusive husband.  AP, however, not only declined to assist

---

[2] The military judge acquitted appellant of two additional specifications of violations of Article 120, UCMJ.

[3] Appellant's matters submitted pursuant to Rule for Court-Martial [hereinafter R.C.M.] 1105 included various allegations of legal error, to include dilatory post-trial processing, a speedy trial violation, and the erroneous admission of AP's testimony under Military Rules of Evidence 403 and 413.

The SJA should have recognized these as allegations of legal error and responded to them.  *See* R.C.M. 1106(d)(4).  However, pursuant to *United States v. Hill*, 27 M.J. 293, 297 (C.M.A. 1988), we are "free to affirm when a defense allegation of legal error would not forseeably have led to a favorable recommendation by the [SJA] or to corrective action by the [CA]."  The issues raised in the clemency matters were thoroughly reviewed by this court, and we find them to be without merit.  As such, based on the record before us, we find the legal errors raised by appellant would not have resulted in a favorable recommendation by the SJA or any corrective action by the CA.

appellant, but contacted CS and told her that appellant had been emotionally, physically and sexually abusive toward her during their marriage.

Although they had only met one time prior, AP and CS began speaking with each other regularly. They were soon confiding in each other about sexual abuse they had suffered at the hands of appellant. CS subsequently shared this information with the government. It was determined that the first wife's accounts of abuse could potentially be used against appellant at his trial for offenses against his second wife. The government notified the defense it intended to call AP as a witness to testify about appellant's previous sexual and physical abuse committed during their marriage.

In response, defense counsel filed a motion in limine to preclude AP from testifying, arguing that her allegations were not reliable and were the result of "improper influence and collusion" with CS. The defense further alleged that when AP initially spoke with CID, she did not mention any sexual abuse by appellant, and it was only three weeks later—following three additional lengthy phone conversations with CS—that she made claims of sexual abuse.

The government responded by asserting that AP's allegations of sexual abuse were admissible pursuant to Military Rule of Evidence [hereinafter Mil. R. Evid.] 413, and that her more general claims of physical and emotional abuse were admissible under Mil. R. Evid. 404(b), claiming they were probative as to appellant's (1) intent to harm CS; (2) lack of mistake of fact that CS consented; and (3) motive to subdue CS. Pursuant to a discussion with counsel during a R.C.M. 802 conference, the military judge determined that "we [will] not have two separate instances of witnesses testifying. Rather, the witnesses [will] testify as it relate[s] to the [Mil. R. Evid.] 404(b) and the 413 [motions], but before closing to deliberate, I will make clear what my findings are related to the testimony that I will consider and not consider."[4]

At trial, CS testified consistently with her initial allegations concerning the events of 13 December 2010. Specifically, she alleged what began as a consensual encounter in their home turned into a violent assault after she no longer wanted to engage in sexual activity, and that appellant pushed her, pinned her down, raped and sexually assaulted her, choked her, struck her, and forcibly sodomized her.

---

[4] In his brief and during oral argument, appellate defense counsel argued that it was "strange" and possibly error for the military judge to allow AP's testimony concerning appellant's abuse during the government's case-in-chief and then postpone his ruling until after the close of evidence. We do not share these concerns as appellant elected to be tried by judge alone, and trial defense counsel stated on the record she understood the military judge's intentions and did not object.

Additionally, CS testified that she had no relationship with AP until early January 2011, when AP called her following AP's discussion with appellant's mother. CS explained that they began calling each other and that she and AP talked about how they were "there to support each other." CS testified that at some point she informed "the prosecutors" about AP.

The government subsequently called AP. She testified that she met appellant twenty-five years earlier when they were teenagers. They had three children together and were married from 1996 to 2008. She further testified that throughout their relationship, appellant was physically and emotionally abusive. She explained that before their marriage, appellant was verbally abusive, calling her a "slut" and "bitch," and accusing her of cheating on him. She also claimed appellant physically abused her before their marriage by "grabbing her arm" and slapping her. AP testified the physical abuse continued during their marriage, as appellant threw her into a table, punched her, and pulled her hair. She claimed the abuse fluctuated, including a period of two "good years" when there were "no episodes at all." AP testified, however, that she and appellant eventually moved to Germany in 2004, where the physical and emotional abuse resumed.

After covering the physical and emotional abuse AP had endured throughout her marriage, trial counsel asked her to "generally describe over the course of time the kinds of sexual abuse, if any . . . ." AP began with a description of appellant's sexual appetite, claiming he wanted sex every day, and this made her "feel like [she was] being forced to have sex."

After some additional testimony about appellant's repeated accusations of infidelity, AP testified about a particular incident. Specifically, she described an incident that occurred in 2005 while she, appellant, and their children were stationed in Germany. She provided a detailed account, explaining that after returning home from a night of drinking alcohol and playing cards at a neighbor's home, she and appellant began having consensual sex when he suddenly began "singing 'who's your baby's daddy'" and then proceeded to choke, squeeze, and hit her while she tried to escape. She explained that appellant eventually dragged her into the bathroom by her hair, where he pressed her face against a mirror and penetrated her vagina with his penis while standing behind her.

Trial counsel then asked if there were other incidents of sexual abuse, and AP testified that appellant would regularly come home on his lunch hour and pull her hair and force her to give him oral sex. AP also testified that on one occasion while appellant was massaging her in bed while she was nude, he suddenly attempted to insert his penis into her anus without any warning. She explained that she and appellant had previously discussed anal sex, and she had expressed to him that she had no desire to have anal sex. AP gave a detailed description of the entire episode, explaining that she physically resisted and struggled, but appellant was able to

4

slightly penetrate her anus before they were finally interrupted by a knock on the bedroom door.

Trial counsel then asked AP to describe how appellant had choked her during their relationship. AP said that appellant choked her "sporadically" during their marriage, and it was "more likely to begin" during sex. Next, trial counsel asked "[w]hen [appellant] would get very angry did he ever do other things destructive or violent behavior not necessarily to you?" AP replied that appellant had broken furniture before, and would "scream and yell, [and] stomp around."

AP briefly testified about appellant's mother's efforts to get her to assist with his case shortly after CS's allegations, and explained that she instead began to speak with CS, at which point she told CS that appellant had sexually assaulted her. AP also stated that she and CS had never discussed how they "would or should answer questions" about abuse committed by appellant.

Furthermore, AP testified that appellant, while he was deployed to Iraq in March 2006, admitted to raping her. Moreover, this testimony was corroborated by the government's admission into evidence of printed excerpts of an online conversation of "instant messages" between AP and appellant that AP had saved on her computer. AP was permitted to read from the exhibit, including a line written by appellant that said, "then I raped you."

During cross-examination, defense counsel confronted AP with divorce paperwork that ended her marriage to appellant. Specifically, defense counsel highlighted that AP checked a block indicating domestic violence had "not occurred" during their marriage and signed the paperwork under penalty of perjury. AP conceded that she "perjured herself" when she completed that paperwork.

Defense counsel concluded the cross-examination of AP by challenging the authenticity of the printed instant messages of her conversations with appellant while he was deployed to Iraq in 2006, suggesting she could have altered or fabricated portions of the exchanges. AP explained that she had been required to copy and paste some portions into a different format in order to print them. Finally, defense counsel asked a few additional questions about AP's interactions with CS, attempting to elicit testimony that AP did not initially tell CID she was sexually assaulted by appellant during their marriage and only provided this information after talking "extensively" with CS.

In addition to the testimony of AP and CS, the government also admitted CS's 911 call from the night of the assault, various photographs portraying her injuries and physical condition in the days following the incident, and testimony of a nurse practitioner who had examined CS shortly after the incident.

Appellant took the stand in his defense and testified that on the night in question, he and CS engaged in consensual "rough" sex that was "routine" for their relationship. He gave a detailed account of the encounter, testifying that at various points, CS hit her head on the headboard of the bed and that he squeezed her arms and grabbed her throat in an effort to assist her in reaching an "extreme" orgasm— all of which was consensual. Appellant elaborated that he and CS were in multiple sexual positions and he was pinning and holding various parts of her body during the event. He testified that he was unable to sexually climax, that after he stopped, CS got up, and that from that point forward his memory got "foggy" for an unspecified period of time.

Appellant asserted he next recalled observing CS in the bathroom, that he followed her in, and they began arguing about whether she had been faithful during his deployment. He testified that CS began screaming, flailing, and shoving him, and that he grabbed her arm to restrain her. He then claimed "that's where it gets a little confusing again" and that he had a hard time recalling details, but that he "bopped her on the head" to get her attention. Next, he said that CS began yelling and banging on all the walls and that all he could do was "look[] at her in a confused state wondering what was going on."

Appellant went on to explain that although the night was "blurry" he recalled going downstairs at some point, subsequently returning to the bedroom, and gathering up the couple's sex toys and taking photographs of them while CS called 911. Appellant claimed he was "just keeping [the photographs] for [his] own reference."

Consistent with his guidance before trial, the military judge deferred his ruling on the admissibility of evidence of prior abuse purportedly committed by appellant against AP. At the close of the defense's case, he provided his findings on the record, which were also captured in more detail in a written ruling. In his conclusions of law pertaining to AP's allegations of prior sexual abuse by appellant, the military judge ruled that this evidence was admissible under Mil. R. Evid. 413 because it met the threshold requirements of the rule and also withstood the Mil. R. Evid. 403 balancing test specifically adopted for evaluating admissibility of prior sexual assaults. The military judge articulated all the factors enunciated by the Court of Appeals for the Armed Forces (CAAF) in *United States v. Berry*, 61 M.J. 91 (C.A.A.F. 2005), and concluded that they all weighed in favor of admissibility.

With regard to the physical and emotional abuse of AP the government sought to admit pursuant to Mil. R. Evid. 404(b), the military judge concluded that it was admissible because AP's testimony tended to prove this abuse occurred, and the prior abuse was relevant to "make some fact of consequence more or less probable." Specifically, the military judge reasoned that it showed: (1) "the intent of the accused to have sex [sic] intercourse and sodomy with [CS] by force without her consent"; (2) "the absence of consent or mistake"; (3) "that any injuries sustained by

[CS] did not result from consensual rough sex;" and (4) "the evidence illuminates the nature of [appellant's] marital relationship with [CS]." Finally, the military judge briefly concluded that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice.

## LAW AND DISCUSSION

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Barnett*, 63 M.J. 388, 394 (C.A.A.F. 2006); *United States v. Whigam*, 72 M.J. 653, 658 (Army Ct. Crim. App. 2013). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citing *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010).

### a. Testimony Admitted Pursuant to Military Rule of Evidence 413

Military Rule of Evidence 413 provides that "[i]n a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant." The rule is an exception to the general restriction against the admission of character evidence—and particularly through prior specific instances of conduct—to prove the accused has a propensity to commit the charged offense(s). *United States v. Wright*, 53 M.J. 476, 480 (C.A.A.F. 2000)[5]; *See generally* Mil. R. Evid. 404(a) (general limitation on character evidence for the purpose of proving action in conformity therewith); Mil. R. Evid. 404(b) (prohibiting evidence of prior acts of uncharged misconduct to prove conformity therewith). "Inherent in M.R.E. 413 is a general presumption in favor of admission." *Berry*, 61 M.J. at 95.

However, despite the rule's liberal standard of admissibility, the evidence still must satisfy minimal burdens of proof and relevance. Initially, the government must demonstrate that "(1) the accused [is] charged with an offense of sexual assault; (2) the proffered evidence must be evidence of the accused's commission of another offense of sexual assault; and (3) the evidence must be relevant under [Mil. R. Evid] 401 and [Mil. R. Evid.] 402." *Solomon*, 72 M.J. at 179 (citing *Berry*, 61 M.J. at 95). Additionally, with respect to the second prong, the allegations of prior sexual misconduct must be supported by "a preponderance of the evidence." *Id; Whigam*, 72 M.J. at 658.

---

[5] *See Wright*, 53 M.J. at 480-81, for the legislative policy behind Mil. R. Evid. 413.

If these threshold requirements are satisfied, the military judge is "constitutionally required" to conduct a balancing test pursuant to Mil. R. Evid. 403 to determine if the probative value of the prior uncharged sexual misconduct is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Mil. R. Evid. 403. *Solomon*, 72 M.J. 179-80. In the context of Mil. R. Evid. 413, the CAAF has adopted and applied a non-exhaustive list of factors (i.e., the *Wright* factors) that the military judge should consider in applying balancing test:

> (1) strength of proof (i.e., conviction v. gossip);
>
> (2) probative weight of the evidence;
>
> (3) potential for less prejudicial evidence;
>
> (4) distraction to the factfinder;
>
> (5) time needed for proof of the prior conduct;
>
> (6) temporal proximity;
>
> (7) frequency of the acts;
>
> (8) presence or lack of intervening circumstances; and
>
> (9) the relationship between the parties.

*Id.* at 181. (citing *Wright*, 53 M.J. at 482). *See Solomon*, 72 M.J. at 180 (citation omitted) ("the Rule 403 balancing test should be applied in light of the strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible").

Further, it is critical that the military judge not only makes, but also thoroughly explains, his findings of fact and conclusions of law in reaching his decision on the admissibility of evidence under Mil. R. Evid. 413. "When a military judge articulates his properly conducted [Mil. R. Evid.] 403 balancing test on the record, the decision will not be overturned absent a *clear* abuse of discretion." *Solomon*, 72 *Id.* (emphasis added).

We find the military judge properly admitted the testimony of AP concerning the prior sexual abuse committed by appellant during their relationship. Here, the military judge issued a written ruling applying the correct legal standard and addressing all of the pertinent *Wright* factors. Therefore, his findings and

conclusions are afforded the strong deference enunciated by our superior court in *Solomon*. *Id*.

*Threshold Test*

First, appellant was charged with various offenses of sexual assault,[6] triggering the potential applicability of Mil. R. Evid. 413. *See* Mil. R. Evid. 413(d)(1). Second, AP offered extensive evidence of appellant's prior acts of sexual abuse through her detailed testimony concerning specific incidents in which appellant sexually assaulted her and through her descriptions of patterns of sexual abuse throughout their relationship. *See* Mil. R. Evid. 413(d)(1). Additionally, her testimony that appellant subsequently acknowledged raping her, along with the instant message conversations capturing this exchange, are further evidence in support of her allegations. Although the defense raised a number of matters undermining AP's credibility, this impeachment did not completely discredit her testimony. Thus we have no doubt that a fact finder could have concluded—by a preponderance of the evidence—that appellant committed the prior acts of sexual assault alleged by AP.

Finally, the third prong of the threshold test was satisfied because appellant's prior sexual abuse against AP clearly made the existence of the facts alleged by CS (i.e., that she was raped and forcibly sodomized by appellant in their bedroom) more probable than they would have been without the evidence provided by AP. Appellant's sexual abuse of AP, his first wife, and the circumstances surrounding her allegations, were similar to the offenses appellant was accused of committing against CS, his second wife, and therefore had a tendency to make it more probable that he sexually assaulted CS on 13 December 2010. *See Berry*, 61 M.J. at 95 (evidence that as teenager defendant molested a young boy had "some tendency to make it more probable" that he committed the charged "nonconsensual act against a vulnerable person).

*M.R.E. 403 Balancing Test for M.R.E. 413 Evidence*

Having determined that the evidence met the threshold requirements above, we now determine if its probative value was substantially outweighed by the danger of unfair prejudice by reviewing whether the military judge properly addressed and applied the factors first enunciated by the CAAF in *Wright*. *Id*. Here, the military judge articulated all of the enumerated factors and concluded that each one weighed

---

[6] Military Rule of Evidence 413(d) defines "sexual assault" much more broadly than the enumerated offense of "aggravated sexual assault" provided in Article 120(c), UCMJ. The definition includes all of the misconduct in the Articles 120 and 125, UCMJ, offenses for which appellant was tried.

in favor of admissibility—essentially eliminating the need for any balancing. The evidence of prior sexual assaults against AP was therefore admissible. Overall, we share his conclusion that these factors weigh heavily in favor of admissibility, and find that he did not abuse his discretion in admitting the evidence.

The strength of the proof of the prior sexual abuse was quite strong. AP provided detailed accounts of multiple instances of sexual abuse she suffered at the hands of appellant, which were corroborated by appellant's acknowledgement of an incident which the accused himself described as "rape."[7] The evidence offered by AP was highly probative, because as previously discussed, her accounts of sexual abuse bore striking similarities to the charged sexual assault offenses described by CS. We also find no other means by which the less prejudicial evidence could have been admitted. AP's testimony demonstrated that she was the only possible witness to any of the alleged abuse, and the internet conversation was the only evidence of what AP took as appellant's confession. With respect to the possible distraction to the fact finder and the time necessary to establish the prior sexual assault, these factors also weigh in favor of admissibility. AP's testimony amounted to less than two hours in a trial that lasted for three days. Moreover, because the evidence was limited to a single witness, it was a minimal distraction at worst—particularly at a bench trial.

Additionally, the military judge specifically addressed the remaining factors and articulated grounds for why each supported admissibility of the evidence. We conclude that he did not abuse his discretion in admitting AP's testimony concerning prior sexual abuse by appellant.

### b. Testimony of Prior Physical and Emotional Abuse Admitted Pursuant to Military Rule of Evidence 404(b)

Military Rule of Evidence 404(b) establishes that with respect to non-sexual offenses, "[e]vidence of other crimes, wrongs, or acts is *not admissible to prove the character of a person* in order to show action in conformity therewith. However, the rule goes on to provide that prior acts of an accused may be "admissible for *other purposes*, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Mil. R. Evid. 404(b). This rule embodies the traditional limitations on the admissibility of character evidence— through prior acts or otherwise—to prove that a defendant possessed a propensity to

---

[7] Appellant's counsel argues that appellant's statement of, "and then I raped you" must be taken in context of the entire conversation via instant messaging. We agree. At worst for appellant, his statement was an explicit admission or confession. At best, it was an acknowledgement that at least one of the parties involved in that prior incident viewed it as a rape.

commit the bad act for which he is now charged. Instead, it allows this evidence to be considered for *non-character* purposes, and only if the government can demonstrate its admissibility pursuant to *United States v. Reynolds* and its progeny. 29 M.J. 105 (C.M.A. 1989).

In *Reynolds* the Court of Military Appeals adopted the following test for determining whether prior uncharged misconduct of an accused is admissible under Mil. R. Evid. 404(b):

> (1) Whether the evidence reasonably supports a finding by the court members that appellant committed the prior crimes, wrongs, or acts;
>
> (2) Whether the evidence makes a fact of consequence more or less probable; and
>
> (3) Whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Mil. R. Evid. 403.

*United States v. Morrison*, 52 M.J. 117, 121-22 (C.A.A.F. 1999) (citing *Reynolds*, 29 M.J. at 109). The CAAF explained that "[p]roof of the first prong is satisfied if the conduct is proven by a preponderance of the evidence." *Id.* at 122. In analyzing the second prong, the "fact(s) of consequence" that are made more or less probable must be one or more of the non-propensity bases provided for in Mil. R. Evid. 404(b). *Id.* The third prong involves a conventional balancing test pursuant to Mil. R. Evid. 403. *Id.* at 123. "The evidence at issue must fulfill all three prongs to be admissible." *Barnett*, 63 M.J. at 394.

Although Mil. R. Evid. 404(b) and Mil. R. Evid. 413 are related and may be invoked by the prosecution to admit the same or similar uncharged acts of an accused, there are inherent and critical differences between the rules. Each rule must be independently analyzed and applied by the military judge.

We find the military judge abused his discretion when he admitted the testimony of AP concerning the remaining prior acts of *non-sexual* domestic violence and abuse. The military judge did little more than cite the proper legal authority before his conclusory finding that:

> [T]he alleged physical and emotional abuse during the course of [] SFC Stanczyk['s] and [AP's] marriage are relevant and admissible during the government's case under MRE 401, 402, 403, and 404(b). The court concludes there is sufficient evidence for a reasonable court member to believe the accused in fact committed the

> alleged physical and emotional abuse during the course of his marriage to AP. This evidence is relevant to show the intent of the accused to have sex [sic] intercourse and sodomy with [CS] by force and without her consent, the absence of mistake, and that any injuries sustained by CS did not result from consensual or rough sex.

He also concluded that this evidence "further illuminates the nature of SFC Stanczyk's marital sexual relationship with [CS]."

At the outset, we note that the military judge did not articulate what "physical and emotional abuse" he was considering and admitting. This largely forecloses our ability to apply the first *Reynolds* factor, which examines "whether the evidence reasonably supports a finding by the court members that appellant committed the prior crimes, wrongs, or acts." [8]

In addition, without any analysis from the military judge, we are at a loss as to how AP's allegations of domestic abuse make any of the Mil. R. Evid. 404(b) non-propensity bases cited by the military judge (i.e., intent, lack of consent, absence of lack of mistake as to consent, and source of injuries suffered by CS) more or less probable, even assuming any of them were germane to either the government's theory or the appellant's defense. Rather, his unsupported conclusions with respect to the second prong of the *Reynolds* test suggest that the prior non-sexual abuse against AP was admitted for precisely the reasons that Mil. R. Evid. 404(a) and (b) prohibit— the use of prior specific uncharged bad acts of an accused to prove his propensity to commit those acts, and that he therefore acted in conformity with that character during the events of the charged misconduct.

Our superior court has "consistently stated that evidence of uncharged [non-sexual] bad acts may not be introduced to show that an accused has a propensity to commit crimes of the type charged." *Morrison*, 52 M.J. at 121. The military judge's conclusions bring to mind the CAAF's strong disapproval of "broad talismanic incantations of words such as intent, plan, or modus operandi, to secure the admission of other crimes or acts by an accused . . . ." *United States v. Yammine*, 69

---

[8] We recognize appellant was also charged with some non-sexual offenses of violence against CS stemming from the events of 13 December 2010. However, the military judge's conclusions regarding the admission of evidence of prior non-sexual domestic abuse against AP was clearly made with respect to proving the *sexual assault* offenses against CS. Thus, we decline to decide under what circumstances— if any—prior uncharged non-sexual domestic abuse against a former spouse can be admitted to establish a 404(b) non-propensity basis to prove appellant committed similar abuse against his current spouse.

M.J. 70, 77 (C.A.A.F. 2010) (citing *United States v. Ferguson* 28 M.J. 104, 109 (C.M.A. 1989)).  Here, his admission of AP's allegations of prior uncharged non-sexual abuse pursuant to Mil. R. Evid. 404(b) was an abuse of discretion.

### c. *Prejudice*

Having determined that the military judge abused his discretion in admitting portions of AP's testimony pursuant to Mil. R. Evid. 404(b), we must test for prejudice under Article 59(a), UCMJ.  Specifically, under these circumstances, we are required to "determine whether this error resulted in material prejudice to [a]ppellant's substantial rights." *Barnett*, 63 M.J. at 397.  "We evaluate prejudice from an erroneous evidentiary ruling by weighing (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999).

Here, the government's case was strong.  First and foremost, the government had the testimony of the victim, CS, who gave a clear, credible and detailed account of the events of 13 December 2010.  Additionally, this evidence was supported by the recording of the 911 call that CS made in the immediate aftermath of the incident, in which she provided details about the abuse that transpired that evening.  Moreover, photographs and testimony by an expert medical witness demonstrated various injuries CS suffered that were consistent with her testimony.  Further, the portions of AP's testimony that were admissible pursuant to Mil. R. Evid. 413—establishing appellant's propensity to commit sexual assault—amounted to compelling evidence that he was guilty of the offenses alleged by CS.

In contrast, the defense case was not strong.  Appellant's testimony about the night of the incident was bizarre and incredible.  Most notably, appellant's thorough recollection of minute details concerning consensual rough sex with CS was contrasted sharply with his "blurry" memory concerning other points throughout the night.  On cross-examination, the government highlighted inconsistencies between appellant's testimony on direct examination and prior statements he made to law enforcement. *See United States v. Pleasant*, 71 M.J. 709, 712 (Army Ct. Crim. App. 2012) ("When an accused testifies on his own behalf, he does so at his own peril, risking that he might fill in gaps or provide affirmative evidence contributing to or resulting in his conviction.").

With respect to the "materiality" and "quality" of the erroneously admitted evidence, we find it was of "marginal importance" and likely had little if any effect on the military judge's findings. *Barnett*, 63 M.J. at 397.  For these reasons, we hold the erroneous admission of portions of AP's testimony concerning non-sexual domestic abuse was harmless error.

**CONCLUSION**

On consideration of the entire record and submissions of the parties, we hold the findings of guilty and the sentence as approved by the convening authority are correct in law and fact.  Accordingly, the findings of guilty and the sentence are AFFIRMED.

Judge CAMPANELLA and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court