FILED
United States Court of Appeals
Tenth Circuit

November 16, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

GEORGE ALLEN LIVINGSTON,

    Defendant-Appellant.

No. 09-6077

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:08-CR-00107-D-1)**

Submitted on the briefs:

James T. Rowan, Oklahoma City, Oklahoma, for Defendant-Appellant.

John C. Richter, United States Attorney and Timothy W. Ogilvie, Assistant United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Before **KELLY, BRISCOE,** and **TYMKOVICH**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Following a stipulated-facts bench trial, the district court convicted

Defendant-Appellant George Allen Livingston of two counts of passing, uttering,

and possessing counterfeit notes with the intent to defraud in violation of 18 U.S.C. § 472, and one count of possession of a firearm after conviction of a felony in violation of 18 U.S.C. § 922(g)(1). Livingston appeals the district court's denial of his motion to suppress the physical evidence that Oklahoma City police officers seized during a search of the motel room he was occupying on January 11, 2008, as well as his subsequent January 23, 2008 confession. This court issued, *sua sponte*, an order to show cause asking the parties to address whether Livingston had effectively waived his right to appeal the denial of his motion to suppress by stipulating to the evidence that supports his convictions. We remand this case to the district court for an evidentiary hearing to determine whether, by stipulating to the facts that supported his convictions, Livingston voluntarily entered into the stipulation knowing of the likely consequences his stipulation would have upon his appeal.

I

On January 11, 2008, Oklahoma City police officers learned from an informant that a man named George, armed with a "big black gun" and suspected of committing several robberies, was staying in either Room 219 or 220 of the Oak Tree Inn. Upon arrival, the officers confirmed with the motel desk clerk that a man meeting the informant's description was currently residing in Room 220. When the officers knocked on the door to Room 220, a man named Angel Rivera, who did not meet the informant's description, answered the door. After learning

2

that Rivera had been staying there for several days, the officers obtained his consent to come inside the motel room. Once inside, the officers obtained Rivera's consent to search for the person named George. The officers found the defendant, George Allen Livingston, inside the bedroom closet. After securing Livingston, one of the officers then noticed a firearm located inside an unzipped duffel bag that was lying open on the floor of the bedroom closet. That officer searched inside the duffel bag and found a smaller bag the size of a shaving kit; he searched inside that smaller bag and found counterfeit currency. The officers arrested Livingston when they learned that the firearm had been reported as stolen. Later, on January 23, 2008, Livingston waived his Miranda rights and voluntarily confessed to printing counterfeit currency and passing that currency on a prior occasion.

Following his indictment, Livingston filed a motion to suppress, claiming that the physical evidence resulting from the search of the motel room and his subsequent confession were obtained in violation of his Fourth Amendment rights. The district court denied the motion in all respects, concluding that Rivera had actual or at least apparent authority to consent to the search, and that the officers were justified in seizing the physical evidence. Livingston then waived his right to a jury trial, and at the bench trial, the parties stipulated to evidence in support of all of the elements of each crime charged in the three-count indictment. The written stipulations presented to the district court at the bench trial were as

follows:

On December 24th, 2007, Livingston, accompanied by another male, entered the Wal-Mart at I-240 and Santa Fe in Oklahoma City, Oklahoma. Acting conjointly, they bought electronic equipment totaling approximately $250 using counterfeit U.S. currency. Livingston stipulates that he knew this quantity of currency was counterfeit and that it was possessed and passed with the intent to defraud.

. . .

On January 11, 2008, at the Oak Tree Inn in Oklahoma City, Oklahoma, Livingston was found in possession of a quantity of counterfeit currency and a firearm. Both were found within a black duffel bag in the closet of the motel room by Officer Van Curen of the Oklahoma City Police Department. Livingston stipulates that he knowingly possessed the counterfeit currency, knew that it was counterfeit, and possessed it with the intent to defraud. Livingston further stipulates he knowingly possessed the firearm described in Count 3.

. . .

Prior to January 11th, 2008, Livingston had been convicted of a felony offense; that is, a crime punishable by a term of imprisonment exceeding one year.

. . .

The firearm described in the indictment and possessed by Livingston on January 11th, 2008, was in or affecting interstate commerce, and that the firearm was manufactured outside the state of Oklahoma and would have had to travel in interstate commerce in order to reach the state of Oklahoma.

. . .

On January 23rd, 2008, Livingston made a voluntary statement to an agent of the United States Secret Service after being advised of his Miranda rights. Livingston waived those rights and stated that he and an accomplice printed counterfeit currency, that they passed counterfeit currency at the Wal-Mart at I-240 and Santa Fe, and that he paid $210 in genuine cash for the black nine-millimeter pistol found in his possession on January 11th, 2008.

4

R. Vol. 3 at 59-63.

In a colloquy with Livingston, the district court read these written stipulations and confirmed that Livingston had read the stipulations before signing them, had consulted with his attorney, and had understood that he was agreeing that the facts contained in those stipulations were true and correct. Id. at 58-64. These written stipulations, and an oral stipulation that the government agreed that Livingston should receive a downward adjustment for acceptance of responsibility pursuant to United States Sentencing Guidelines § 3B1.1, were the sum total of the evidence presented to the district court. The district court convicted Livingston on all three counts. Livingston then filed this appeal contending the district court erred in denying his motion to suppress.

## II

While Livingston's appeal was pending before this court, we *sua sponte* questioned our jurisdiction. Because Livingston's convictions were based on agreed stipulations, it appeared that a reversal of the district court's suppression ruling would have no impact on Livingston's convictions. We reasoned that Livingston's stipulations were tantamount to an unconditional plea of guilty, and as such, amounted to a waiver of all non-jurisdictional defenses, including the right to appeal the district court's denial of his motion to suppress. See United States v. Davis, 900 F.2d 1524, 1525-26 (10th Cir. 1990) (declining to review the district court's denial of a motion to suppress because the defendant entered an

5

unconditional plea of guilty).  We therefore directed the parties to show cause why we should not dismiss the appeal for lack of jurisdiction.  In doing so, we alerted the parties to a factually similar Ninth Circuit case, United States v. Larson, 302 F.3d 1016 (9th Cir. 2002), in which that court concluded that if a defendant's stipulation to all the elements of 18 U.S.C. § 922(g)(1) was "found to be valid, there would no longer be a live controversy relating to the suppression motion and thus [the court] would have no jurisdiction."  Id. at 1020.  Given that the record in that case suggested that the defendant "may not have known that a direct consequence of the stipulated-facts trial would be to moot his appeal of the suppression ruling," the Ninth Circuit remanded the case to the district court "for an evidentiary hearing to determine whether [the defendant] entered into the stipulation knowing of the consequences to his appeal and voluntarily surrendering his appeal of the suppression motion."  Id. at 1022.

In response to our show cause order, Livingston argues that Larson "is identical to the case now before the court," and he urges us to follow Larson and remand his case to the district court for an evidentiary hearing.  Aplt. Resp. at 3. Livingston "emphatically states that he was told the stipulation would not deprive him of his right to appeal," and he further explains that "[b]oth attorneys agreed that it was the intent of the government and the defendant in entering into the Stipulation of Fact, signed by the parties, to avoid a time-consuming jury trial and that [Livingston's] right to appeal his conviction and the court's ruling on the

6

Motion to Suppress would be preserved." Id. at 2. He has additionally submitted affidavits of both his trial counsel and his appellate counsel. Both counsel confirm that Livingston's trial counsel never informed him that by stipulating to the facts which support his convictions, he could potentially moot his appeal of the district court's suppression ruling. Although given the opportunity to respond to Livingston's response to our show cause order, the government has filed nothing to contradict these assertions.

### III

We agree that a remand is necessary. Valid stipulations "are the equivalent of proof and on appeal neither party will be heard to suggest that the facts were other than as stipulated;" however, to be valid a party must enter into a stipulation "freely and voluntarily." United States v. Campbell, 453 F.2d 447, 451 (10th Cir. 1972). Here, despite the thorough colloquy the district court conducted with Livingston before accepting the stipulations, the knowing and voluntary nature of his stipulations appears to be in question because Livingston may have been unaware that by stipulating to facts at his bench trial he was implicitly waiving his right to appeal the suppression ruling.[1] Although "[a] defendant's knowing and voluntary waiver of the statutory right to appeal his sentence is generally

---

[1] We do not fault the district court for this omission because the record does not indicate that either Livingston's counsel or counsel for the government informed the district court that even after entering the stipulation of facts Livingston still intended to appeal the denial of his suppression motion.

7

enforceable," United States v. Hernandez, 134 F.3d 1435, 1437 (10th Cir. 1998), the record before us and Livingston's response to our show cause order both indicate that Livingston may not have knowingly and voluntarily waived his right to appeal the suppression ruling. At no point during the brief stipulated-facts trial did the district court inform Livingston that he was jeopardizing his right to appeal the suppression ruling; in fact, Livingston alleges that based on his trial counsel's representations, he operated under an entirely contrary understanding. See David Henry Aff. ¶ 5 ("I advised . . . Livingston that he could preserve his right to appeal the court's order overruling his Motion to Suppress if he would agree to waive a jury trial and enter into a written stipulation with the government as to the facts of the crimes charged in the indictment.").

Accordingly, we remand this case to the district court to conduct an evidentiary hearing to determine whether Livingston "entered into the stipulation knowing of the consequences to his appeal and voluntarily surrendering his appeal of the suppression motion." Larson, 302 F.3d at 1022.

REMANDED for further proceedings consistent with this opinion.