# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
AYRES, YOB, and KRAUSS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 DEMONE M. WHIGHAM**
**United States Army, Appellant**

ARMY 20110181

Headquarters, United States Army Aberdeen Proving Ground
Denise R. Lind, Military Judge
Lieutenant Colonel Joseph M. Masterson, Staff Judge Advocate


For Appellant:  Mr. Frank Spinner, Esquire (argued); Captain Jack D. Einhorn, JA; Mr. Frank Spinner, Esquire (on brief).

For Appellee:  Sasha Rutizer, JA (argued); Major Robert A. Rodrigues, JA; Captain Sasha Rutizer, JA (on brief).


4 June 2013

---------------------------------
OPINION OF THE COURT
---------------------------------

AYRES, Chief Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of two specifications of violating a general regulation and two specifications of aggravated sexual assault in violation of Articles 92 and 120(c), Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920(c) (2006 & Supp. I 2007), *amended by* 10 U.S.C. § 920 (Supp. V 2011)   [hereinafter UCMJ].  The panel sentenced appellant to a dishonorable discharge, confinement for four years, and forfeiture of all pay and allowances.  The convening authority approved the sentence as adjudged.

Appellant's case is before this court for review under Article 66, UCMJ. Appellant raises two assignments of error, one alleging the evidence at trial was legally and factually insufficient to support his conviction, and the second alleging the military judge abused her discretion in admitting evidence of appellant's uncharged misconduct under Military Rules of Evidence [hereinafter Mil. R. Evid.]

413 and 404(b). After examining the record of trial, considering the parties' briefs, and enjoying the benefit of oral argument, we find no merit in these assignments of error for the reasons set forth below. In particular, we address an issue the parties discussed in oral argument as to whether appellant waived appellate consideration of any objection to the admission of portions of the uncharged misconduct on appeal by entering into a stipulation of fact midway through trial.

## BACKGROUND

The charges in this case were tried in the second of two courts-martial that arose from appellant's sexual misconduct while serving as a cadre member and non-commissioned officer (NCO) instructor for Advanced Individual Training (AIT) students at Aberdeen Proving Ground. In this position, appellant had authority over trainees in A Company, 143d Ordnance Battalion. Appellant engaged in inappropriate sexual acts with several soldiers attending AIT. While the misconduct tried in both courts-martial stems from acts committed contemporaneously, the charges were tried separately because of delayed reporting by the victims in the present case.

*Appellant's Prior Court-Martial*

Prior to and during January 2008, appellant, who was a staff sergeant, engaged in inappropriate sexual conduct with several AIT trainees, including Private (PVT) TB, PVT SH, and PVT SCW. Appellant had sexual intercourse with PVT SCW, and engaged in sexual contacts of PVT TB and PVT SH over their clothing. Each of these incidents occurred within the Alpha Company administration building at Aberdeen Proving Ground, the location of the offices where the cadre conducted most of its business.

The government charged appellant with violating Article 92, UCMJ, for disobeying Army Reg. 600-20, Army Command Policy [hereinafter AR 600-20], para. 4-15(a) (7 June 2006), by having sexual relationships with trainees; Article 107, UCMJ, for making false official statements about the same; and Article 120, UCMJ, for sexually assaulting PVT TB, PVT SH, and PVT SCW. On 14 March 2009, appellant pleaded guilty at a general court-martial to the Article 92, UCMJ and Article 107, UCMJ, offenses related to PVT SH and PVT SCW. Pursuant to a pretrial agreement, the government withdrew the Article 120, UCMJ, charge and its specifications. The military judge accepted a stipulation between the parties that indicated the sexual conduct between appellant and PVT SH and PVT SCW was consensual. After the court accepted appellant's plea to the Article 92, UCMJ, and Article 107, UCMJ, violations,[1] the government dismissed all charges and

---

[1] As a result of this stipulation in the first court-martial, the question of constructive force and the degree of "consent" possible between a soldier in a Basic or AIT environment and their drill instructor was not at issue.

specifications related to PVT TB.  Appellant was found guilty, pursuant to his pleas, and was sentenced to a dishonorable discharge, confinement for two years, and reduction to the grade of E-1.

*Incident Leading to Second Court-Martial*

Approximately two months after the initial court-martial, the two victims in the present case, Private (PV2) SMH and PV2 EDP, reported additional allegations of sexual assault by appellant.  Private SMH and PV2 EDP were female trainees who had also been members of A Company, 143rd Ordnance Battalion during the December 2007 time period.  They reported appellant had sexually assaulted them while they served as AIT students under his supervision.

According to these victims' testimony, in December 2007, while on charge of quarters duty, appellant discovered PV2 SMH and PV2 EDP in the male living area after lights out.  This violated established policy, which the parties knew could subject the female trainees to administrative action or punishment under the UCMJ.  Upon discovery of their misconduct, appellant directed the two trainees to wait for him in the administration building, which was otherwise empty at that time of night.  He later met them there and told them they were in significant trouble and faced both non-judicial punishment under Article 15, UCMJ, and potentially being held over to repeat the course.  This was upsetting to both trainees, as class was scheduled to end in a matter of days, to be followed by a period of leave coinciding with the holiday break.  Appellant then pulled PV2 EDP aside and told her if she and PV2 SMH performed sexual favors, he would not report the misconduct.

Shaken by the prospect of disciplinary action, the two trainees went with appellant into a classroom.  Private EDP described what happened there in her sworn testimony:

> After we ended up in the classroom, I guess he [appellant] wanted to do me first, I guess, so he pulled up my shirt and started fondling my breasts, then told me to bend over the table.  I can't remember who pulled my pants down.  I was bent over the table.  I heard him rustling with a condom wrapper behind me.  Then he entered me for 2-3 minutes.  Then he pulled out.  At that time, I was crying over the table.  I remember him asking me if I was okay.  Then he did [PV2 SMH].

Private SMH described the incident similarly when she testified under oath:

> A [PV2 SMH]:  He [appellant] said, "You're next.  It's your turn," directed towards me.  And I froze—I didn't

3

> know what to do. I kinda inched forward—it took a little
> while.
>
> Q [Trial Counsel]: What was your demeanor at the time?
> Do you recall?
>
> A: I was crying—I started shaking. I was scared. I didn't
> know what was going on. He grabbed my wrist and kinda
> pulled me over.
>
> Q: What happened after he pulled you over?
>
> A: He faced me towards the wall and pushed my pajama
> pants and my underwear to the floor.
>
> Q: What wall did he place you against?
>
> A: The wall with the white board.
>
> Q: When he placed you against that wall, what happened?
>
> A: He pushed my torso down on the desk, and proceeded
> to penetrate me.
>
> Q: Before the accused penetrated you, did you say
> anything to him?
>
> A: I told him I didn't want to do it anymore, I said, "I
> don't wanna do this." I said, "I don't wanna do it." He
> didn't say anything; he just did it anyway.

Once appellant had finished these assaults, the trainees left and made a pact with each other not to report what had happened to them. According to their testimony, their rationale was to avoid being held over the holidays pending an investigation, coupled with a fear that even if they reported the assault, the command would not believe them.

In January 2008, PV2 SMH returned to Aberdeen Proving Grounds and learned appellant was under investigation for other sexual misconduct. During a telephone conversation with PV2 EDP, she told her about this investigation. Neither reported the sexual assault at that time. Eventually, in February of 2009, during a unit Soldier Readiness Processing (SRP) event for her reserve unit, PV2 EDP was asked the question of whether she had ever been sexually assaulted. She responded to the individual conducting the medical screening questionnaire at the SRP that she

had. After the screener told her the difference between a restricted and unrestricted report, PV2 EDP elected to make a restricted report.[2] Three months later, she contacted a sexual assault response coordinator and changed her report to an unrestricted report. In response to this change, the U.S. Army Criminal Investigation Command (CID) opened an investigation into her complaint. The investigation also included contacting PV2 SMH, wherein she provided her description of the assault. The completed investigation led to the charges in the present case.

*Second Court-Martial*

At trial, the government sought to admit evidence of appellant's commission of one or more offenses of sexual assault related to charges appellant faced in his first court-martial under Mil. R. Evid. 413 and alternatively under Mil. R. Evid. 404(b). Specifically, the government proffered: (1) appellant touched PVT TB's breasts through her clothing inside the administration building; (2) appellant rubbed PVT SH's groin inside the administration building; and (3) appellant had sexual intercourse with PVT SCW inside the administration building.

Appellant moved to suppress the evidence, arguing the incidents with PVT SH and PVT TB and the consensual sex with PVT SCW were not sufficiently similar to the alleged assault against PV2 EDP or PV2 SMH, and therefore, were not relevant to show any likelihood that appellant had sexually assaulted the victims in the current court-martial. Defense counsel also argued that the parties stipulated at the first court-martial that appellant's sexual contact of PVT SH and PVT SCW was consensual in nature. Defense counsel also attacked the strength of proof of the acts, noting appellant pleaded not guilty to charges regarding PVT TB and those charges were dismissed with prejudice.

Pursuant to *United States v. Wright*, 53 M.J. 476 (C.A.A.F. 2000), the military judge ruled that the evidence relating to PVT TB was admissible under Mil. R. Evid. 413 as propensity evidence for the Article 120, UCMJ, specifications. Conversely, the military judge denied the government's motion to introduce Mil. R. Evid. 413 propensity evidence relating to PVT SH and PVT SCW. Specifically, the military judge concluded that the government could not contradict the stipulation of fact from appellant's prior trial that stated appellant's acts with PVT SH and PVT SCW were consensual.

---

[2] A restricted report allows a sexual assault victim to disclose confidentially the details of an assault and receive medical treatment and counseling without triggering an official investigation. *See* AR 600-20, Army Command Policy, para. 8-4(c) (18 March 2008) [hereinafter AR 600-20 (2008)]. An unrestricted report will generate an official investigation. *Id.* at 8-4(d).

However, the military judge ruled that the uncharged misconduct evidence offered through the testimony of PVT SH and PVT SCW was admissible under Mil. R. Evid. 404(b). In her ruling the judge noted:

> The uncharged misconduct as testified to by [PVT SH] and [PVT SCW] makes it more probable that the accused had the opportunity to abuse his authority as a cadre member with authority of A company trainees, that he prepared for and planned to have sexual activity with A company trainees late at night in the administration building while he was the sole cadre on duty, and that he intended to avoid discover [sic] by having such relationships in the administrative building late at night. The uncharged misconduct is connected in time, place, and circumstances with the offenses charged in the specification of Charge II.

The military judge ultimately held the uncharged misconduct relating to PVT SH and PVT SCW was admissible under Mil. R. Evid. 404(b) to prove appellant had the opportunity, plan, preparation, and intent to commit the Article 92, UCMJ, charge and its specifications. The military judge also ruled that the evidence relating to PVT TB, while admissible under Mil. R. Evid. 413, was not independently admissible under Mil. R. Evid. 404(b). The judge fashioned and provided tailored limiting instructions in accordance with her decisions and without objection from either party.

During trial, PVT TB testified about appellant groping her breasts inside the administration building. PVT SH and PVT SCW did not ultimately testify. Instead, the defense elected to enter into a stipulation of fact concerning the evidence to be introduced under Mil. R. Evid. 404(b) with respect to PVT SH and PVT SCW. The judge completed the necessary colloquy so as to ascertain appellant's understanding and agreement to the nature and effect of the stipulation. The preface to the stipulation of fact included a statement waiving any objection to admissibility of the stipulated matters.

## LAW AND DISCUSSION

*Military Rules of Evidence 404(b) and 413*

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Barnett*, 63 M.J. 388, 394 (C.A.A.F. 2006). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citation omitted).

Mil. R. Evid. 404(b) provides, in part, that evidence of other crimes, wrongs, or acts, is admissible for the limited purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See generally United States v. Morrison*, 52 M.J. 117, 121–22 (C.A.A.F. 1999). Before admitting evidence under Mil. R. Evid. 404(b), a military judge must make findings on the following factors:

> (1) Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?
>
> (2) What fact of consequence is made more or less probable by the evidence?
>
> (3) Is the probative value substantially outweighed by the risk of unfair prejudice to the accused?

*United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989).

Mil. R. Evid. 413(a) is far less restrictive and states: "In a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant." There are three threshold requirements that must be met before admitting evidence of similar sexual assaults: (1) the accused must be charged with an offense of sexual assault; (2) the proffered evidence must be supported by a preponderance of the evidence, of the accused's commission of another offense of sexual assault; and (3) the evidence must be relevant under Mil. R. Evid. 401 and Mil. R. Evid. 402. *Wright,* 53 M.J. at 482–83.

But there are significant safeguards. When considering whether to admit evidence of similar crimes in sexual assault cases, the military judge must also conduct a balancing test under Mil. R. Evid. 403 which provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The factors relevant to this balancing include:

> (1) Strength of proof of prior act (conviction versus gossip);
>
> (2) Probative weight of the evidence;
>
> (3) Potential for less prejudicial evidence;

(4)  Distraction of the factfinder and time needed for proof of prior conduct;

(5)  Temporal proximity;

(6)  Frequency of the acts; and

(7)  Presence or lack of intervening circumstances and relationship between the parties.

*United States v. Solomon*, 72 M.J. 176, 180 (C.A.A.F. 2013); *Barnett*, 63 M.J. at 396.

*Evidence related to PVT TB*

We find the military judge properly admitted testimony of PVT TB concerning a prior sexual assault against her.  The judge issued a detailed written ruling, in which she applied the proper Mil. R. Evid. 413, 404(b) and 403 standards in her ruling that evidence related to the prior sexual assault against PVT TB was admissible under Mil. R. Evid. 413 as propensity evidence concerning the sexual assault charges in appellant's second court-martial.  We further find the military judge's application and balancing of these factors as they relate to evidence concerning PVT TB was entirely proper and not clearly erroneous.

The ruling correctly noted the strength of proof of the uncharged sexual assault against PVT TB was high, as was the probative value of this evidence.  There was no error in the military judge's application of the *Wright* factors or in conducting a Mil. R. Evid. 403 balancing and her conclusion that the probative value of the uncharged sexual assault against PVT TB was not substantially outweighed by the danger of unfair prejudice to the accused, confusion of the issues, misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Appellant's brief concedes the military judge "cited the correct rules of evidence . . . and legal standards in making her ruling" and argues only with her balancing of the factors.  He asserts that the judge failed to properly consider dismissal of the previous charges relative to PVT TB as a fact when conducting the necessary Mil. R. Evid. 413 analysis.  Even though the judge may not have clearly articulated her consideration of that factor in her written ruling, any such error was harmless under the circumstances.  The record reveals nothing other than the previous charge was dismissed as a matter of prosecutorial discretion in the course of negotiating a pretrial agreement.  Considering this dismissal along with all other relevant factors, admission of the underlying misconduct involving PVT TB was

proper under Mil. R. Evid. 413 and Mil R. Evid. 403. *See United States v. Griggs*, 51 M.J. 418, 419–20 (C.A.A.F. 1999) ("[R]elevant and probative evidence that is otherwise admissible under the Rules of Evidence [is not rendered inadmissible] simply because it relates to alleged criminal conduct for which a defendant has been acquitted." (quoting *Dowling v. United States*, 493 U.S. 342, 348 (1990))). *Cf. Solomon*, 72 M.J. at 179–80;

The care with which the military judge analyzed the factors is also evidenced in her ruling that while Mil. R. Evid. 413 evidence concerning PVT TB was admissible with respect to the sexual assault charge, it was not admissible under Mil. R. Evid. 404(b) with respect to the charge of violating a regulation. The military judge fashioned and gave appropriate limiting instructions to the members consistent with this ruling.

*Evidence related to PVT SH and PVT SCW*

When appellant entered into a stipulation of fact to the testimony of PVT SH and PVT SCW about his prior sexual activity these former AIT students, he waived any further appellate review of his objection to the admissibility of this evidence and the military judge's ruling on this issue. The stipulation of fact in this case contains a section entitled: "NATURE AND USE OF THIS STIPULATION." That provision reads:

> IT IS STIPULATED between Trial Counsel and Defense Counsel, with the express consent of the Accused, that the following facts are true, accurate, susceptible of proof, and admissible under the Military Rules of Evidence. These facts can be considered by the Military Judge, the court-martial panel, and any appellate authority in determining the sufficiency of the evidence supporting the verdict, and they may be considered by the sentencing authority in determining an appropriate sentence even if the evidence of the facts are otherwise inadmissible. Accused and counsel agree to waive any possible objections under the Military Rules of Evidence, the United States Constitution and applicable case law, except those listed in Rule for Court-Martial 705(c)(1)(B), to matters contained in the stipulation.

Such an unconditional stipulation waives any error associated with the admission of the evidence and the issue need not be reviewed by this court. *See United States v. Campos*, 67 M.J. 330, 332–33 (C.A.A.F. 2009); *United States v. Zakaria*, 38 M.J. 280, 283–84 (C.M.A. 1993). *See also United States v. Garcia-Ruiz*, 546 F.3d 716

(5th Cir. 2008).[3] Of great concern to this court is whether appellant knowingly waived his rights in this case by entering into the stipulation of fact that detailed the Mil. R. Evid. 404(b) evidence with respect to PVT SH and PVT SCW, and whether the appellant knew that the broad waiver language noted above would in effect waive his rights to challenge the admission of that evidence on appeal.

This court finds the waiver in this case to be knowing and voluntary. Although counsel for both sides have argued the "boiler plate" nature of the preliminary paragraphs contained in the Stipulation of Fact, this court has found no precedent suggesting that there is any standard, uniformly accepted "form" for a stipulation of fact. The *Manual for Courts-Martial* does not contain one.[4] To the contrary, each jurisdiction may well have their own particular preferences, and within those jurisdictions the trial and defense counsel may, at their discretion, agree or not agree regarding the waiver terms included in such stipulations.

The record establishes appellant intentionally relinquished a known right to challenge the admissibility of evidence related to his sexual misconduct with PVTs SH and SCW. *See Campos*, 67 M.J. at 332. Indicative of appellant's conscious waiver is the tactical decision to stipulate as expressed on the record:

> As we discussed, the defense has offered to enter into a stipulation of fact as a less prejudicial way to get the information the government seeks under [Mil. R. Evid.]

---

[3] A conditional stipulation, preserving a suppression issue, for example, is permitted, but the defense must, of course, first obtain the government's agreement to that condition, and second, expressly preserve their right to appeal the lost motion as part of the stipulation by declaring on the record that the accused entered into the stipulation contingent upon the government's agreement and the trial court's recognition that the accused intended to preserve that issue on appeal. *See Zakaria*, 38 M.J. at 283–84 (holding that accused did not waive error to review admission of a stipulation of fact where the record indicated that counsel did not consider the admissibility question as being waived by the stipulation of fact); *Garcia-Ruiz* 546 F.3d at 718; Rule for Courts-Martial [hereinafter R.C.M.] 811. We decline to adopt an approach requiring the judge to positively ascertain whether the accused understands he is surrendering his right to appeal a lost motion under these circumstances in favor of requiring the defense to announce preservation of that right on the record. *Contra United States v. Livingston*, 586 F.3d 819, 822 (10th Cir. 2009).

[4] We note that R.C.M. 811, (b) and (c), allows a military judge to decline to accept a stipulation "in the interests of justice," and that before accepting a stipulation the military judge must "be satisfied that the parties consent to its admission."

> 404(b) in front of the members. The government will not
> be allowed to contradict the stipulation. If there is further
> evidence that the government wants to put in the
> stipulation of fact, that's something you will have to
> discuss and agree to. If you can't agree on a stipulation of
> fact, then we're back to square one.

Rather than require production of and testimony from PVT SH and PVT SCW, the defense entered into a stipulation of fact describing appellant's prior sexual misconduct with them.[5] The right to call live witnesses, for apparent tactical reasons, was rejected by appellant in favor of the stipulation of fact. That stipulation came with a price—the waiver of later being able to raise the denial of the motion to suppress as an appellate issue.[6]

Even absent this waiver, we find the military judge properly admitted evidence pertaining to appellant's prior sexual activity with PVT SH and PVT SCW under Mil. R. Evid. 404(b). The judge applied the proper Mil. R. Evid. 404(b) standard in her ruling, as appellant conceded in his brief. She properly ruled that the evidence was relevant only as to the second charge, alleging appellant violated a regulation prohibiting improper sexual relations between cadre and AIT students. The evidence the government sought to admit through PVT SH and PVT SCW made it more probable that appellant had the opportunity, plan, and intent to engage in improper sexual relations with the AIT students involved in the second court-martial. The judge examined each element of the *Reynolds* test in detail and applied them to the facts of this case, ultimately determining that the probative value of the evidence, as it related to the second charge, outweighed the danger of unfair

---

[5] We note that avenues other than a stipulation of fact with such broad waiver language were available to appellant, to include demanding production of the witnesses, or entering into a much more limited stipulation of expected testimony, as well as the sort of conditional stipulation of fact discussed above.

[6] It should further be noted that while the evidence contained in the stipulation was clearly beneficial to the prosecution, it did not amount to a confessional stipulation. Had such been the case, the military judge would have been obligated to "make a further inquiry to assure that the government was not circumventing either the letter or the spirit of Article 45(a), UCMJ, 10 U.S.C. 845(a)." *United States v. Bertelson*, 3 M.J. 314, 316 (C.M.A. 1977). If this had been the case, the so-called *Bertelson* inquiry would have been required. *Id.* In this case, appellant's stipulation of fact, made for tactical reasons, clearly provided the government with helpful, although not dispositive, evidence for the trier of fact to consider. It also was clearly beneficial to appellant as it limited the government to the reading of the written word rather than the live testimony of what could have been two additional-and perhaps sympathetic-victims.

prejudice with respect to the evidence concerning appellant's actions with PVT SH and SCW. The judge did not abuse her discretion in any of these rulings.

Given the government's stipulation in the first court martial that appellant's sexual activity with these particular AIT students was essentially consensual, the judge properly excluded this evidence from being admitted in the second court-martial under Mil. R. Evid. 413. She thus prohibited its use as propensity evidence in support of the sexual assault charge. The military judge gave a proper limiting instruction in this regard.

### *Legal and Factual Sufficiency*

Article 66, UCMJ, provides that a Court of Criminal Appeals "may affirm only such findings of guilty . . . as it finds correct in law and fact." In performing our duty, we must conduct a de novo review of both the legal and factual sufficiency of appellant's convictions. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Phillips*, 70 M.J. 161, 166 (C.A.A.F. 2011). The resolution of any legal sufficiency questions must be made by drawing "every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A. 1991). Reviewing factual sufficiency, on the other hand, "involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses." *Washington*, 57 M.J. at 399. The test for factual sufficiency is whether, "after weighing the evidence of record and making allowances for not having personally observed the witnesses," this court is "convinced of appellant's guilt beyond a reasonable doubt." *United States v. Craion,* 64 MJ. 531, 534 (Army Ct. Crim. App. 2006).

The charges of aggravated sexual assault alleged in this case required the government to prove: (1) that appellant engaged in a sex act with another person; and (2) that appellant did so by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person would be subjected to death, grievous bodily harm, or kidnapping). *Manual for Courts-Martial*, *United States* (2008 ed.), pt. IV, ¶ 45.b.(3).

We are convinced beyond a reasonable doubt that appellant sexually assaulted PV2 SMH and PV2 EDP and engaged in inappropriate sexual relations with them in violation of a general regulation. Appellant argues that the evidence is factually insufficient because the two victims were motivated to lie in order to avoid an impending deployment, their testimony was inconsistent, and he had a valid alibi

defense.  First, the asserted motive for the victims to fabricate their version of events in order to avoid deployment is inconsistent with the victim's initial report as a restricted report, which would by definition not initiate a criminal investigation.  Further, this alleged motive would at best only apply to PV2 EDP as there would be no apparent benefit for PV2 SMH.  Nor do we find any evidence PV2 EDP coordinated with PV2 SMH.  Any alleged collusion between the two would be unlikely and speculative, especially as the two did not remain in direct contact  after the incident.

Secondly, the minor nature of the inconsistent portions of the statements noted by appellant are insufficient to raise reasonable doubt.  On the contrary, these particular inconsistencies seem reasonable given the length of time between the incident and the trial.  It is axiomatic in the context of factual sufficiency, that the evidence need not be free of conflict or that every minor conflict in the evidence be resolved.  *United States v. Teeter*, 12 M.J. 716, 722 (A.C.M.R. 1981) (citation omitted)*, rev'd in part on other grounds*, *United States v. Teeter*¸ 16 M.J. 68 (C.M.A. 1983).  There is no challenge to the consistency of the victims' recitation about what happened.  Appellant solely offers inconsistencies as to environmental factors, such as whether the room was quiet or not, whether they passed a fireguard or not, and similar insignificant details.  Finally, evidence of appellant's alibi defense is far from conclusive and based on the evidence presented, we find it unconvincing.

A review of the complete record without regard to the Mil. R. Evid. 404(b) and 413 evidence reveals sufficient evidence, both legally and factually, to convict appellant of all the charges related to PV2 EDP and PV2 SMH.  Having found no error with regard to the military judge's ruling concerning the evidence admitted under Mil. R. Evid. 404(b) and 413, as well as recognizing that appellant waived any objection to admissibility to the Mil. R. Evid. 404(b) evidence when he stipulated to its admissibility, we likewise find the evidence in total to be legally and factually sufficient to support the findings.

## CONCLUSION

On consideration of the entire record, the briefs submitted by the parties, oral argument, and those matters appellant personally raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the findings of guilty on all specifications and the sentence as approved by the convening authority are AFFIRMED.

Senior Judge YOB and Judge KRAUSS concur.



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court