# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, J.A. FISCHER, T.H. CAMPBELL**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**VICTOR A. HURTADO**
**SERGEANT (E-5), U.S. MARINE CORPS**

**NMCCA 201500051**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 2 October 2014.
**Military Judges:** CAPT Bethany L. Payton-O'Brien, JAGC, USN (Arraignment);
LtCol Eugene H. Robinson, Jr., USMC (Motions); CAPT Andrew Henderson, JAGC,
USN (Merits and Sentencing).
**Convening Authority:** Commanding General, II Marine Expeditionary Force, Camp
Lejeune, NC.
**Staff Judge Advocate's Recommendation:** Maj K.G. Phillips, USMC.
**For Appellant:** LT David Warning, JAGC, USN.
**For Appellee:** LT James Belforti, JAGC, USN; Capt Matthew Harris, USMC.

**29 February 2016**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS
PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

FISCHER, Senior Judge:

At a mixed plea general court-martial, a military judge convicted the appellant, pursuant
to his plea, of wearing an unauthorized insignia in violation of Article 134, Uniform Code of
Military Justice, 10 U.S.C. § 934. A panel of members with enlisted representation convicted the
appellant of violating a lawful order and committing a lewd act upon a child in violation of
Articles 92 and 120b, UCMJ, 10 U.S.C. §§ 892 and 920b. The convening authority (CA)

approved the adjudged sentence of 36 months confinement, reduction to paygrade E-1, forfeiture of all pay and allowances, and a dishonorable discharge.

The appellant asserts five assignments of error (AOE): (1) the military judge improperly admitted evidence of the appellant's alleged prior sexual misconduct; (2) after admitting the prior sexual misconduct evidence, the military judge further erred by precluding the defense from disclosing to the members that the appellant was acquitted of the prior allegation at a separate court-martial; (3) the military judge erred by denying challenges for cause against two of the members; (4) the appellant's court-martial was infected with apparent unlawful command influence; and (5) the appellant's trial defense counsel were ineffective because one of his military attorneys had a conflict of interest.[1] We find merit in the appellant's first AOE and take remedial action in our decretal paragraph.

**Background**

Beginning in the summer of 2013, the appellant rented the basement apartment of a house where Senior Chief Machinist Mate (MMCS) TM lived with his wife and two children. The family lived on the upper two floors of the house, but the appellant had a lease provision that permitted him to access the family's portion of the house on Thursdays to do laundry. He would occasionally enter their part of the house at other times, as well. When MMCS TM's daughter, DM, met the appellant she found him to be friendly and nice in their limited contacts. After living in the house for a few months, DM and the appellant interacted more frequently and spent time talking together both in the family's living space and in his apartment.

DM testified that in December 2013, she was in the kitchen working on a school project when the appellant came in and showed her two television shows on his tablet computer. DM stated that after about an hour of watching the shows, the appellant moved behind her and unsnapped her bra multiple times before groping her chest over her clothing while kissing her neck. According to DM, after the appellant stopped the next thing she remembered was her mother calling for her to come upstairs. DM was 14 years old at the time of this incident. Later that same month DM told her mother what the appellant had done.

**Discussion**

*Evidence of the Appellant's Prior Sexual Misconduct*

At a June 2012 special court-martial, the appellant was acquitted of Article 128, UCMJ, assault consummated by battery specifications involving then Lance Corporal (LCpl) KA.[2] Those allegations stemmed from an incident the preceding February when the appellant drove

---

[1] The fifth AOE was submitted pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982). The alleged conflict related to Master-at-Arms Seaman (MASN) ZC, initially a Government witness previously represented by one of the appellant's military counsel. MASN ZC was a Government witness for larceny charges against the appellant. The military judge granted a defense request to sever the larceny charges involving MASN ZC so that military counsel could continue representation in this court-martial . Thus, we find this claim of ineffective assistance of counsel lacks merit. *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).

[2] KA had been discharged from the Marine Corps by the time of this trial.

2

LCpl KA to their scheduled pistol range evolution. Arriving early, the appellant parked as they waited for the range gate to open. According to LCpl KA, she apologized for possibly seeming disrespectful that morning explaining that she was in a bad mood because her boyfriend had broken up with her the previous night. LCpl KA stated the appellant then grabbed her by the blouse, pulled her to him, gave her an open mouth kiss and said, "I hope that helped." He then got out of the car to check whether the range had opened and talk with other arriving Marines.

After the Government properly notified the defense of its intent call KA as a witness and introduce her testimony pursuant to MILITARY RULES OF EVIDENCE 413 and 404(b), SUPPLEMENT TO MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), the trial defense team made a timely motion to exclude her testimony. The military judge denied the defense motion, finding KA's testimony admissible under both MIL. R. EVID. 413 and 404(b).

The appellant contends the military judge abused his discretion in denying the defense motion arguing his ruling: (1) violated the Constitution's *ex post facto* prohibition in admitting evidence under MIL. R. EVID. 413 by incorporating an older version of Article 120, UCMJ, which was never part of MIL. R. EVID. 413; (2) applied an Article 120 definition that does not encompass the conduct; and (3) improperly applied the MIL. R. EVID. 403 balancing test.[3] We agree that the military judge erred in conducting his MIL. R. EVID. 403 balancing. Resolving the AOE on this basis alone, we need not address the appellant's other contentions.

This court reviews "a military judge's decision to admit evidence for an abuse of discretion." *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citing *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010)). "'The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)).

MIL. R. EVID. 413(a) states, "In a court-martial proceeding for a sexual offense, the military judge may admit evidence that the accused committed any other sexual offense. The evidence may be considered on any matter to which it is relevant." Thus, "inherent in M.R.E. 413 is a general presumption in favor of admission." *United States v. Berry*, 61 M.J. 91, 95 (C.A.A.F. 2005) (citation omitted).

*MIL. R. EVID. 413 Threshold Requirements*

Before admitting evidence under MIL. R. EVID. 413, three initial threshold requirements must be met: (1) the accused is charged with a sexual offense within the meaning of MIL. R. EVID. 413(d); (2) the proffered evidence is evidence that the appellant committed another sexual offense within the meaning of MIL. R. EVID. 413(d); and (3) the proffered evidence is logically relevant under both MIL. R. EVID. 401 and 402. *Solomon*, 72 M.J. at 179 (citing *Berry*, 61 M.J. at 95 and *United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000)). To meet the second requirement, the military judge must conclude that the members "could find by [a]

---

[3] Appellant's Brief of 22 Jun 2015 at 1.

preponderance of the evidence that the offenses occurred[.]" *Wright*, 53 M.J. at 483 (citing *Huddleston v. United States*, 485 U.S. 681, 689-90 (1988)).

The military judge found the threshold requirements were met. He stated that the appellant was charged with the sexual offense of "sexual abuse of a child." He was satisfied that KA's expected testimony was sufficient to meet the preponderance standard, explaining that while the offense was previously charged as an assault consummated by battery under Article 128, UCMJ, "the prior sexual misconduct clearly fell under Article 120 in its form at that time as 'other sexual misconduct' that could be categorized as an indecent act."[4] He also found the evidence relevant to show the accused's propensity to commit this type of offense, and relevant for its tendency to show pattern, plan, intent, and absence of mistake.[5]

*403 Balancing Test and Wright Factors*

Once the evidence meets the threshold requirements, "the military judge is constitutionally required to also apply a balancing test under M.R.E. 403" to determine whether the probative value of the evidence is outweighed by the danger of unfair prejudice. *Solomon*, 72 M.J. at 179-80 (citing *Berry*, 61 M.J. at 95). When conducting this balancing test, "the military judge should consider the following non-exhaustive factors:"

(1) strength of proof of the prior act (*i.e.*, conviction versus gossip);
(2) probative weight of the evidence;
(3) potential for less prejudicial evidence;
(4) distraction of the factfinder;
(5) time needed for proof of the prior conduct;
(6) temporal proximity;
(7) frequency of the acts;
(8) presence or lack of intervening circumstances; and
(9) the relationship between the parties.

*Solomon*, 72 M.J. at 180 (citing *Wright*, 53 M.J. at 482). If the "balancing test requires exclusion of the evidence, the presumption of admissibility [that is inherent within MIL. R. EVID. 413] is overcome." *Berry*, 61 M.J. at 95 (citing *Wright*, 53 M.J. at 482-83). "When a military judge articulates his properly conducted M.R.E. 403 balancing test on the record, the decision will not be overturned absent a clear abuse of discretion. *Solomon*, 72 M.J. at 180 (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). However, when the military judge does not sufficiently articulate his balancing on the record, his evidentiary ruling will receive less

---

[4] Appellate Exhibit LXIII at 4. Assuming without deciding that the military judge did not err in applying the version of Article 120 in effect from 2007-2012 for the MIL. R. EVID. 413 analysis he conducted in this 2014 court-martial, it does not change our assessment of his MIL. R. EVID. 403 balancing test. *See United States v. Fetrow,* __M.J.__, No. 38631, 2016 CCA Lexis 53 (A.F.Ct.Crim.App. 21 Jan 2016).

[5] AE LXIII at 7.

deference from this court. *Berry* 61 M.J. at 96 (citing *United States v. Dewrell*, 55 M.J. 131, 138 (C.A.A.F. 2001)) (additional citations omitted).

### 1. *Strength of proof of the prior act (i.e., conviction versus gossip)*

In addressing the first *Wright* factor, the military judge stated in his written findings:

The evidence of the prior act was given under oath in a sworn statement and at a previous court-martial. [KA] is a former active-duty enlisted Marine. Her testimony is supported by a formal investigation and corroborating statements of others to whom she made a fresh complaint. A factfinder could easily find by a preponderance that the proffered offense occurred and that the accused committed it.[6]

In this analysis, the military judge failed to articulate any consideration or even acknowledgement of the appellant's acquittal for the conduct against KA.[7] Nor did the military judge apparently consider any weaknesses or deficiencies in KA's testimony in conducting his assessment. Rather, relying solely on a law enforcement investigative report, the military judge concluded that the factfinder could easily find by a preponderance that the appellant committed the prior alleged offense.[8] Although a prior acquittal on a sexual offense allegation does not bar subsequent admission of the same allegation under MIL. R. EVID. 413, "[t]here is a need for great sensitivity when making the determination to admit evidence of prior acts that have been the subject of an acquittal." *United States v. Griggs*, 51 M.J. 418, 420 (C.A.A.F. 1999). We find that the prior acquittal reduced the strength of proof of the prior act and when "the strength of proof is significantly lower than the military judge determined, its probative weight is similarly reduced." *Solomon*, 72 M.J. at 181. Consequently, we further find the military judge clearly erred in not considering the fact of the prior acquittal in his 403 balancing analysis.

### 2. *Probative weight of the evidence*

In addressing the probative weight of the evidence, the military judge stated:

The evidence is highly probative based upon some similarity to the presently charged offense. The state of mind of the accused manifested in this earlier offense may be consistent with that alleged in the instant charged offense. The accused appears to have been alone with both victims when he unexpectedly grabbed and kissed them without their consent… [KA] on the mouth with his lips and tongue and D.M. on the neck with his lips. Both incidents also apparently occurred with others in the vicinity though not in the immediate area where the

---

[6] AE LXIII at 4.

[7] The military judge did include a factual finding that the appellant was acquitted of these offenses. *Id*. at 2.

[8] KA did not testify at the motions hearing and although the military judge references KA's sworn testimony at the prior court-martial, there was no evidence in the record that her testimony from the first court-martial was before the judge in deciding the motion.

acts occurred…in the accused's vehicle with [KA] upon arriving at the rifle range where other Marines were present and on the main level of the house wherein D.M. and the accused resided while D.M.'s family was present on the second floor. This evidence demonstrates a pattern to some degree.[9]

Besides involving physical interaction between the appellant and a female, we find more differences than relevant similarities in the two incidents. First, the charged offense occurred with a 14-year-old girl and the uncharged misconduct involved a 21-year-old woman. The significance of that age difference is recognized in the evidentiary rules themselves where a distinct rule relates to the admission of evidence of similar crimes in child molestation cases (MIL. R. EVID. 414) vice in sexual offense cases (MIL. R. EVID. 413). We find the age difference here reduces the probative weight of the uncharged misconduct. Second, since lack of consent is not an element of the charged lewd act upon a child offense under Article 120b, UCMJ, we find the military judge's focus on consent in assessing the probative weight of the uncharged conduct misplaced.[10] Third, while the military judge attempted to parallel the incidents by emphasizing that the appellant "unexpectedly grabbed and kissed" both females, the evidence reveals two distinct events. In one, while in the alleged victim's home, the appellant groped a 14-year-old's breasts over her clothing while behind her. In the other, the appellant and KA were in his car engaged in a personal conversation when he allegedly pulled her towards him, put his arms around her, and kissed her. On the whole, the victims are notably distinct and the conduct is notably different as reflected in the military judge's tepid comparison and conclusions that the two incidents bear "some similarity," that the appellant's state of mind "may be consistent," and that there is a pattern to "some degree." Finally, the appellant was charged with committing a lewd act upon DM by intentionally touching her breast through her clothing with the intent to gratify his sexual desires. Nowhere in the specification is the appellant charged with kissing DM on the neck or elsewhere. Thus, while the military judge should have analyzed the probative weight of the prior sexual offense toward the charged offense, he instead focused on the probative weight of the prior sexual offense toward additional uncharged conduct.

3. *Potential for less prejudicial evidence; distraction of the factfinder; time needed for proof of the prior conduct*

We agree with the military judge's conclusion that there was no less prejudicial evidence. Like the military judge, we find distraction to the factfinder and time needed to prove the prior conduct to be linked since the primary consideration for both was KA's testimony. But we find the military judge's brief analysis on these factors completely overlooked the amount of time required for KA's testimony, the opportunity for the Government to overemphasize the prior

---

[9] AE LXIII at 4-5 (emphasis added).

[10] It is clear from the trial defense counsel's cross-examination of KA that they contested her account of the appellant's kiss on the theory that she either consented or the appellant had a reasonable mistake of fact that she consented. That they successfully did so in the appellant's first court-martial reduces the strength of proof of the prior act and ultimately the probative weight of this evidence.

offense, and the impact this would have on the trial, resulting in a "distracting mini-trial" on the prior alleged assault.[11] *Solomon*, 72 M.J. at 181 (citing *Berry*, 61 M.J. at 97).

The Government began its opening statement began by bringing the prior offense against KA to the members' attention:

> She's young. She's naïve, she's new to the area, and she knows the accused. She looks up to him and he starts to flirt with her. He's playful at first and then he's going for it. He touches her, he kisses her, and she freaks out. Now, you've all seen the cleansed charge sheet and you're probably thinking, we're talking about December 19th, 2013. If that's what you're thinking, there's a 50 percent chance you're right. Because the accused not only did that, but that's in March, on 19 December 2013, but he did it to [KA] over 2 years prior. Two women, who were total strangers. You're going to learn that on the night of December 13th, it was not the accused's first rodeo. It's his MO. What his MO is, he just takes what he wants.[12]

The trial counsel placed significant emphasis on the prior offense throughout his opening statement, culminating in essentially telling the members it would tip the scales in favor of a guilty verdict: "But if you have any doubt at the end of this trial, just remember, you will have heard the testimony of [KA]. You will have seen the pattern, and you will have no problem convicting him beyond a reasonable doubt. Because the accused just does what he wants."[13]

Additionally, KA testified for longer than any other witness, including the victim of the charged offense.[14] During the Government's closing argument, counsel again tied the case back to the theme that this is not the first time the appellant took advantage of a young, vulnerable female.[15] More significantly, the Government's rebuttal argument focused heavily on the alleged prior offense and its similarity to the charged offense in an attempt to show the appellant's propensity to assault DM:

---

[11] We also note that although the military judge's ruling permitted KA's testimony "concerning the circumstances of the [appellant] forcefully kissing her," KA testified, without objection, that the appellant invaded her "personal bubble" twice the previous day, including once after she warned him, on the pretense of assisting her with weapons training, and further that the appellant called her cellphone that night to offer her a ride to the range the next morning despite not having provided the appellant her phone number. On direct examination KA also testified, without objection, to her opinion of how a sergeant in the Marine Corps should interact with a lance corporal, implying the appellant's conduct toward her fell below that standard. Over defense objection the military judge permitted the Government to introduce text messages KA sent to another sergeant immediately after the incident to report it.

[12] Record at 673.

[13] *Id.* at 676.

[14] Though the exact time cannot be determined by the Record, DM's testimony consumes 33 transcribed pages while KA's covers 59 pages.

[15] Record at 932.

Two total strangers, D.M., [KA]. What is their relationship to the accused? A 28-year-old man hanging out with a 14-year-old girl. [KA], what's the relationship with the accused? Experienced sergeant in her command, a brand new lance corporal. What kind of social networks do they have? D.M., is in a new house going to a new school and has no friends. [KA] is at a new command, in a new state, no friends. What's the approach? The advice, be her confidant. Help her with her stance, her grip. How to fire her pistol, give her rides around base. Perhaps too much striking similarity is the moment in which he executes, when they're vulnerable. Parents arguing, failing math, broke up with her boyfriend. This is his pattern. This is his modus operandi.[16]

While the military judge who presided over the merits portion of the trial could have prevented any distraction of the factfinder by "tak[ing] action during trial to limit its overuse," he failed to do so and the significant emphasis the Government placed on the prior offense in this case resulted in the "sort of sidetracking of the factfinder that should be avoided when admitting M.R.E. 413 evidence." *Solomon*, 72 M.J. at 182 (citing *Berry*, 61 M.J. at 97 (finding it evident that a "distracting mini-trial" occurred where trial counsel's opening statement began with reference to the MIL. R. EVID. 413 prior act, and his closing argument emphasized the prior act); *United States v. James*, 63 M.J. 217, 222 (C.A.A.F. 2006) (finding the military judge exhibited sensitivity to the potential for unfair prejudice by limiting the scope of admissible propensity evidence to brief testimony and the trial did not become sidetracked); *United States v. Bailey*, 55 M.J. 38, 41 (C.A.A.F. 2001) (finding the military judge "kept the witness' testimony abbreviated and focused" to ensure a minimum amount of time would be spent on MIL. R. EVID. 413 evidence)).

Not only did the MJ's ruling allow the Government to overuse evidence of the prior offense, resulting in a distracting mini-trial, it did so without the "ameliorative effect" of informing the members about the acquittal. *Solomon*, 72 M.J. 182. The military judge's ruling further stated, "while the circumstances of the sexual misconduct with [KA] is admissible, neither the fact that the allegations resulted in a court-martial of the accused nor the results of said court-martial are admissible and should not be elicited in testimony or presented as an exhibit."[17]

4. *Temporal proximity; frequency of the acts; presence or lack of intervening circumstances; relationship between the parties*

Concerning these *Wright* factors the military judge's written findings state:

a. Temporal proximity: Occurred approximately two years prior to the charged offense, but while still in the same unit and within the same tour of duty.

---

[16] *Id.* at 949.

[17] AE LXIII at 7.

b.  Frequency of the acts: This was a single act of sexual misconduct, but because of its unique nature, highly probative of the accused's state of mind, especially in the context of the whole picture.

c.  Presence or lack of intervening circumstances: There is a lack of intervening circumstances.  The accused was an adult at the time of the charged offense and the act in question.  Though approximately two years had passed, both victims were young females with [KA] approximately 20 years-old and the DM 14 years-old.  During this period the accused remained assigned to his present unit, MCSFBn.

d.  Relationship between the parties: The accused had limited interaction with either victim prior to the incidents.  The nature of the relationship will be central to both sides of the case.[18]

Although the military judge addressed each of these *Wright* factors, he articulated isolated facts and/or conclusory statements with minimal analysis as to whether, and more importantly, why the factors favored admission or exclusion of the evidence.  He failed to expound upon the significance of the cited two-year gap between the incidents or what importance he found in the appellant being assigned to the same unit during both incidents.  Nor did he explain how the appellant's interaction with KA was "unique" and "highly probative" of the appellant's "state of mind," or how that was at issue in the charged offense.  In sum, we find the military judge's analysis of these *Wright* factors less than thorough and thus accord his conclusions based on them less deference.

Considering the limited probative value of KA's testimony, the time and distraction involved in admitting her testimony, and the military judge's incomplete analysis of the remaining *Wright* factors, we conclude the value of her testimony was outweighed by the danger of unfair prejudice to the appellant.  Applying the appropriate deference to the military judge's ruling, we find KA's testimony fails the MIL. R. EVID. 403 balancing test and that the military judge clearly abused his discretion in admitting her testimony.

*Prejudice*

"A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."  Art. 59(a), UCMJ.  "When a military judge abuses his discretion in the M.R.E. 403 balancing analysis, the error is nonconstitutional."  *Solomon*, 72 M.J. at 182 (citing *Berry*, 61 M.J. at 97).  In the case of nonconstitutional error, "the Government has the burden of demonstrating that 'the error did not have a substantial influence on the findings.'"  *Berry*, 61 M.J. at 97(quoting *United States v. McCollum*, 58 M.J. 323, 342 (C.A.A.F. 2003) (additional citation omitted).

To determine if the error is harmless, we apply a four-part test, weighing: (1) the strength of the Government's case; (2) the strength of the defense's case; (3) the materiality of the

---

[18] *Id.* at 5.

evidence in question; and (4) the quality of the evidence in question. *See United States v. Barnett*, 63 M.J. 388, 394 (C.A.A.F. 2006) (quoting *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999)); *see also* Art. 59(a), UCMJ.

DM testified that the appellant unhooked her bra multiple times and then put his hands on her chest and kissed her neck while standing immediately behind her. Her testimony regarding the event, although not detailed, was compelling. The defense attacked DM's account through cross-examination, introduced evidence of DM's prior inconsistent statements regarding the incident location and why she and the appellant were together before the alleged touching. The defense also suggested DM fabricated this incident as a result of an unhappy home life, thereby preventing a potentially imminent move out of state during her freshman year of high school. There were no witnesses to the central interactions between the appellant and DM.

Though DM's testimony was potentially sufficient to stand on its own, the Government made KA a central theme of its case. KA's testimony added another first-hand account of an individual the appellant allegedly assaulted. Arguments that KA's testimony was "just one part of an otherwise strong case against Appellant,"[19] belies the considerable time spent presenting and arguing this specific evidence.[20] In light of the Government's emphasis on KA's testimony throughout trial and the exclusion of the appellant's prior acquittal from the members' consideration, we find testimony about the prior offense "improperly tipped the balance of the evidence," and the Government failed to demonstrate that the evidence "'did not have a substantial influence on the findings.'" *Berry*, 61 M.J. at 97 (quoting *McCollum*, 58 M.J. at 342).[21]

### *Challenge for Cause*

The appellant also avers that the military judge abused his discretion in denying challenges for cause against Lieutenant (LT) R and Gunnery Sergeant (GySgt) T on the grounds of actual and implied bias. In LT R's case, he knew both the appellant and one of the witnesses, Captain (Capt) D, USMC. Capt D had previously been LT R's executive officer and at the time of the court-martial they were colleagues, but their relationship was solely professional. During individual *voir dire* LT R described Capt D "as an outstanding naval officer," with excellent integrity, held in very high esteem, truthful, and an officer who could be relied upon. GySgt T knew the appellant and had heard about the case, stating it was "[j]ust pretty much what we are doing here right now. Just something about a younger female and that's about it."[22] When questioned further, GySgt T could not recall the specific person from whom he had heard about the case.

---

[19] Appellee's Brief of 20 Oct 2015 at 23.

[20] Record at 673, 675-76, 791-826, 843-47, 931-33.

[21] The military judge included in his conclusions of law, "*Assuming arguendo* that the testimony is not admissible under MIL. R. EVID. 413, then the testimony of [KA] is admissible under MIL. R. EVID. 404(b) and is not otherwise precluded by MIL. R. EVID. 403." AE LXIII at 6. We also find KA's testimony fails a 403 balancing test in a MIL. R. EVID. 404(b) analysis.

[22] Record at 587.

RULE FOR COURTS-MARTIAL 912(f)(1)(N), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) requires the removal of a court member "in the interest of having the court-martial free from substantial doubt as to legality, fairness and impartiality." This rule encompasses both actual and implied bias. *United States v. Clay,* 64 M.J. 274, 276 (C.A.A.F. 2007). Although actual and implied bias are not separate grounds for challenge, they do require separate legal tests. *Id.* Challenges for both actual and implied bias are based on the totality of the circumstances. *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007). The burden of establishing the basis for a challenge is on the party making the challenge. *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996) (citing R.C.M. 912(f)(3)).

### 1. Actual Bias

A military judge's ruling on a challenge for cause based on actual bias is reviewed for an abuse of discretion. Because the question of whether a member is actually biased is a question of fact, and involves judgments regarding credibility, the military judge is given significant deference in determining whether a particular member is actually biased. *Terry*, 64 M.J. at 302; *Clay*, 64 M.J. at 276. While LT R served closely with and held a high opinion of Capt D, he maintained that he was no more likely to believe Capt D's testimony than any other witness, and he was confident he could follow the military judge's instructions and be objective when evaluating the evidence. GySgt T had very minimal knowledge of the case and stated that he did not form any opinion about the case based on that knowledge and would be able to put it aside and be an impartial member of the panel. Based on the totality of these circumstances, we conclude that the military judge did not abuse his discretion in denying the challenges against these two members based on actual bias.

### 2. Implied Bias

The standard of review for implied bias is "less deferential than abuse of discretion, but more deferential than *de novo* review." *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006) (citations omitted). However, military judges who place their reasoning on the record and consider the liberal grant mandate will receive more deference on review. *Clay*, 64 M.J. at 277. Here, the military judge recognized and applied the liberal grant mandate and articulated his analysis on the record, and his ruling should therefore be given greater deference.

The test for implied bias is objective. Viewing the situation through the eyes of the public and focusing on the perception of fairness in the military justice system, we ask whether there is too high a risk that the public will perceive that the accused received less than a court composed of fair and impartial members. *United States v. Wiesen,* 56 M.J. 172, 176 (C.A.A.F. 2001). As in actual bias, we analyze implied bias based on the totality of the circumstances. *United States v. Strand*, 59 M.J. 455, 459 (C.A.A.F. 2004).

Here, the military judge clearly understood the rule for implied bias and the liberal grant mandate. Citing to the mandate and articulating his analysis on the record, he granted seven of ten defense challenges for cause. Invoking the same implied bias analysis and giving due consideration to the liberal grant mandate, he denied the challenges against LT R and GySgt T. We agree with the military judge's conclusion that, viewed objectively, a member of the public

would not question the fairness of LT R and GySgt sitting as panel members. Considering the totality of the circumstances, we find that the public would perceive this panel to be fair and impartial and we conclude that the military judge did not err in denying the defense's challenge against these members based on implied bias.

### *Unlawful Command Influence*

For the first time on appeal, the appellant alleges that his court-martial was infected with apparent unlawful command influence because (1) five of the panel members knew Capt D; (2) panel members GySgt T and LT R knew the appellant and GySgt T had heard something about the allegations against the appellant; and (3) after KA testified, during a recess in the proceedings, Sergeant Major (SgtMaj) B from the appellant's unit approached KA and reportedly said, "It took a while, but we finally got that piece of s---."[23]

We review unlawful command influence *de novo*. *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994). Article 37(a), UCMJ, states, "No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence . . . the action of any convening, approving, or reviewing authority with respect to his judicial acts." The appellant has the initial burden of producing sufficient evidence to raise unlawful command influence. *United States v. Stombaugh*, 40 M.J. 208, 213 (C.M.A. 1994). This threshold is low, but it must be more than "a bare allegation or mere speculation." *United States v. Johnston*, 39 M.J. 242, 244 (C.M.A. 1994) (citation omitted).

To raise the issue on appeal, the appellant must show: (1) facts which, if true, constitute unlawful command influence; (2) that the proceedings were unfair; and (3) that unlawful command influence was the cause of the unfairness. *Stombaugh*, 40 M.J. at 213. The appellant must meet this initial burden before the burden shifts to the Government to demonstrate beyond a reasonable doubt either that there was no unlawful command influence or that the proceedings were untainted. *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999). An appearance of unlawful command influence arises "where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *United States v. Lewis,* 63 M.J. 405, 415 (C.A.A.F. 2006)

In this case, the appellant has failed to show facts which, if true, constitute unlawful command influence. As discussed *supra,* we find that the military judge fully addressed the issues related to the panel members during the *voir dire* and challenge process and find no lingering issues that would cause an informed member of the public to question the fairness of the appellant's court-martial in that regard. Additionally, although we certainly do not condone the intemperate comment SgtMaj B allegedly made, we note it was entirely outside the presence of the members and the defense counsel failed to bring it to the attention of the military judge. Given the circumstances, we are convinced that an objective fully informed disinterested member of the public would not harbor doubts about the fairness of the proceedings. In short, the appellant's contentions do not meet the first prong of the *Stombaugh* test. Additionally, we find that the appellant has also failed to meet the second and third prongs of the *Stombaugh* test. Even if we were to assume that taken as a whole the complained of statement created the

---

[23] Appellant's Brief, Appendix 1 at 2, Affidavit of LT Michael Ellis, JAGC, USN of 11 May 2015.

12

appearance of undue influence, the appellant still has not met his burden to show: (1) that the proceedings were unfair; and (2) that unlawful command influence was the cause of the unfairness. *Stombaugh*, 40 M.J. at 213. The appellant has failed to meet his initial burden of production on unlawful command influence and therefore we decline to grant relief.

## Conclusion

The findings of guilty to Charge II and the sole specification thereunder and the sentence are set aside. A rehearing on this charge and the sentence or solely on the sentence may be ordered. The remaining findings of guilty are affirmed. The record is returned to the Judge Advocate General for transmission to the CA for such further action as is deemed appropriate, consistent with this decision. Art. 66(d), UCMJ. Following post-trial review the record will be returned to the court for completion of appellate review.

For the Court



R.H. TROIDL
Clerk of Court